IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| UNITED STATES OF AMERICA | | CRIMINAL CASE NUMBER: |
|---|---|---|
| v. | | 1:18-mj-1083-JSA |
| DESMOND MURRAY | | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned on Defendant's Motion to Dismiss With Prejudice [26] the pending Criminal Complaint, on the grounds that the Government has not timely indicted under the Speedy Trial Act. The Court **RECOMMENDS** that the Motion be **DENIED.**

**I.   BACKGROUND**

On November 7, 2018, the Government obtained a criminal Complaint charging Defendant with bank fraud and conspiracy to commit bank fraud on or about December 17, 2015, in violation of Title 18, U.S.C. §§ 1344 and 1349. [1]. A warrant was issued for the Defendant's arrest. He was arrested on March 1, 2019 and brought before the nearest U.S. Magistrate Judge, in the U.S. District Court for the Central District of California, on March 4, 2019. *See* Rule 5(c)(3) paperwork [4]. Defendant appeared before this Court for the first time the following week, on March 13, 2019 [5]. The Government moved to detain, but

U.S. Magistrate Judge John K. Larkins granted the Defendant's pretrial release pursuant to a $20,000 surety bond as well as conditions including home confinement [16][17].

On March 18, 2019, the parties jointly moved for a continuance of the thirty-day deadline in the Speedy Trial Act for the Government to obtain an Indictment. *See* 18 U.S.C. § 3161(b).  Judge Larkins granted this motion and allowed the Government until April 24, 2019 to seek an Indictment [12].  On April 14, 2019, the parties moved again for another extension of this date, which Judge Larkins again granted, this time until May 24, 2019 [21][23].  The reason provided for the parties' joint requests was that the parties were negotiating a potential resolution to the charges and wished the opportunity to see if an agreement could be reached prior to any indictment.  *Id.*  Judge Larkins approved this reasoning, and expressly found that all time involved in these continuances, from April 1 through May 24, to be excluded from Speedy Trial Act calculations.  *Id*.

The Government proffers, and Defendant does not dispute, that the parties engaged in substantial negotiations and held multiple meetings (including with the Defendant himself) during this timeframe.  On or about April 26th, 2019, after hearing a presentation as to the Government's evidence and legal positions as to the application of the sentencing guidelines, the Defendant indicated that he would accept a plea agreement.  *See* Gov't Br. [28] at 5.  The facts are unclear as to what

happened over the course of the next several weeks except that the parties discussed modifying the conditions of Defendant's bond. *Id*. at 5-6. Despite the reference to a plea agreement, no resolution of the case apparently occurred by May 23. Early that morning, Government counsel realized that he had mistakenly calendared the Indictment/Information deadline as May 31, 2019, and that in fact the deadline was the following day, May 24. Over the course of emails and calls between May 23rd and May 24th, Government counsel requested that Defendant agree to a plea agreement or at least another short continuance. *Id*. Defendant's counsel indicated after these discussions that the Defendant was now insisting that the Government agree to recommend a probationary sentence (which was apparently a new demand) and that the Defendant would not agree to another continuance of the Indictment deadline without such an agreement. *Id*. at 6-7.

Apparently, no such agreement could be reached by the Indictment deadline of May 24th. No indictment was obtained by that day and on May 31, 2019, the Defendant moved to dismiss the Complaint with prejudice.

 II.   ANALYSIS

   A. *Standards*

Under the Speedy Trial Act, the prosecution must obtain an indictment against a defendant (or file an information) within thirty days from the date on which the Defendant was arrested. 18 U.S.C. § 3161(b). This deadline is subject

to a variety of exclusions, by which delays caused by specific events are excluded from the thirty-day calculation. *See* 18 U.S.C. § 3161(h). Included in these exclusions is the so-called ends-of-justice continuance, that is, any period of delay that the Court finds to be necessitated by specific reasons, so long as the Court expressly finds that the ends-of-justice supporting the delay outweigh the public's and the defendant's right to a speedy trial. *Id*. § 3161(h)(7)(A). The statute also includes several other automatically-excluded time periods including, in relevant part here, those resulting from the pendency of any pretrial motion, *id*. § 3161(h)(1)(D), and any proceeding relating to the transfer of a case or the removal of any defendant from another district, *id*. § 3161(h)(1)(E).

Notably, the Eleventh Circuit has made clear that the district courts cannot enlarge or expand the 30-day time period to indict under § 3161, except for the limited circumstance where a grand jury is not in session during the 30-day period (in which case the statute allows an enlargement to 60 days). *See United States v. Godoy*, 821 F.2d 1498, 1502-03 (11th Cir. 1987). The district court can provide more time for the Government to formally charge a Defendant, not by enlarging the 30-day time period itself, but rather by excluding time from that 30-day period by way of ends-of-justice findings. *Id*.

In the case of a violation of the Speedy Trial Act, the charges "shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). A dismissal may be

with or without prejudice. *Id.* In determining whether to dismiss with prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). "'Where the crime charged is serious, the court should dismiss [with prejudice] only for a corresponding severe delay.'" *United States v. Williams*, 314 F.3d 552, 557 (11th Cir. 2002) (*quoting United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984).

### B. *There Is No Speedy Trial Act Violation*

This is an unusual case in which the parties originally both believed there to be a Speedy Trial Act violation. But there is not.

As noted above, the Government generally must indict an individual within thirty days of arrest, subject to various exclusions of time. Here, the Defendant was arrested on March 1, 2019, and thus absent any exclusions of time the Government was required to formally charge him by April 1st. As of April 1st, Judge Larkins extended the Government's deadline to indict, twice, ultimately to May 24th, 2019, and stated that "[f]ailure to [indict] by that time will result in dismissal of the above-styled complaint." Because the Government failed to charge the Defendant by May 24th, the Government in its response to the Defendant's Motion to Dismiss conceded the existence of a Speedy Trial Act

violation, and only opposed the motion to the extent it sought dismissal *with prejudice*.

All of this seems straight-forward enough on first blush. The Court, however, observed that the parties appeared to clearly misapply the Speedy Trial Act in overlooking whether other statutory exclusions would apply based on the court activity in between March 1 and April 1, 2019. After providing the parties with notice of its concerns, the Court invited and received oral argument [30] to obtain clarification from the parties in this regard.[1] It was ultimately not disputed in the oral argument that the parties did, in fact, overlook the applicability of certain automatic statutory exclusions.

Specifically, the parties' assumption that the thirty-day deadline to indict would run by April 1, 2019, absent any subsequent ends-of-justice continuance or exclusion, was incorrect. A plain reading of the statute and the activity recorded on the docket indisputably shows that a substantial amount of the time between

---

[1] The Court has the discretion to consider issues *sua sponte* that have been neglected by the parties so long as the parties have been provided notice of the Court's consideration of the issues and a fair opportunity to present their positions. *See, e.g., Jackson v. Sec'y, Dep't of Corr.*, 292 F.3d 1347, 1349 (11th Cir. 2002). The Court finds it to be appropriate to consider the parties' clear oversights as to the application of the Speedy Trial Act, as doing so furthers correct application of the law and is therefore in the interests of justice, and as the parties have been afforded notice and an opportunity to be heard.

March 1 and April 1 was subject to other automatic statutory exclusions, as explained below:

- First, as noted above, the Defendant was arrested in California and was removed via the procedures of Fed.R.Civ.P. 5 to this District. All the time from the beginning of the removal proceedings on March 4, 2019 [4-6] through his first appearance in this District, on March 13, 2019 [5]—10 days—was automatically excluded from the Speedy Trial calculations per 18 U.S.C. § 3161(h)(1)(E).

- Second, the Government filed a motion for detention on March 13, 2019, *see* minute entry [5]; Judge Larkins scheduled a hearing on that motion for March 18 [7] and then continued that hearing until March 21 [8], at which hearing Judge Larkins ruled on the motion by granting a bond [15][16]. Per 18 U.S.C. § 3161 (h)(1)(D), the entire period in which this pretrial motion was pending and under advisement, from March 13 through March 21—a further eight days— was automatically excluded from Speedy Trial calculations.

Thus, as of the beginning of Judge Larkins's ends-of-justice exclusions on April 1, 2019, only approximately 12 days of non-excludable time had passed against the Government's § 3161(b) deadline, not 29 days as the parties mistakenly assumed. Said another way, after the expiration of the ends-of-justice exclusions on May 24, 2019, the Government still had as many as *18 days left* to formally

charge the Defendant pursuant to the statute. The Government was therefore not in violation of the Speedy Trial Act as of May 24th, or even May 31st, when Defendant filed the instant motion to dismiss. And because that motion remains pending—thus tolling the Speedy Trial clock yet again, *see* 18 U.S.C. § 3161(h)(1)(D)—the Government is still not in violation, and as many as approximately 11 days will remain on the § 3161 deadline after timely resolution of the instant motion. The parties apparently both misunderstood and misapplied the plain words of the statute in believing otherwise.

It is true that Judge Larkins's April 18th order [23] gave an express deadline of May 24th, 2019 for the Government to formally the charge the Defendant, which the Government failed to meet. But the Defendant's Motion to Dismiss is premised on a purported violation of the *Speedy Trial Act*, not specifically as a sanction for violating any other provision of the April 18th Order. Neither in his motion nor in the oral argument did Defendant suggest or provide authority for the notion that the Court could or should independently enforce the reference to indicting by May 24th, to the extent that date differed from the deadline required by the Speedy Trial Act (which it does).

Indeed, as noted above, the district courts cannot generally enlarge the § 3161(b) 30-day deadline to some other future date. *See Godoy*, 821 F.2d at 1502-03. Instead, what matters for Speedy Trial Act purposes is how many days are

*excluded* from that 30-day calculation. The answer, from Judge Larkins's orders, is that the entire period from April 1-May 24 was excluded. That the parties mistakenly believed at the time that this exclusion resulted in a May 24th deadline—and that Government counsel prepared and Defendant's counsel agreed to a proposed order that reflected this mutually-mistaken belief—is not what *Godoy* would have us now enforce. Instead, the Court must apply the agreed-to and Court-ordered 53-day ends-of-justice exclusion, in combination with the other automatic exclusions discussed above. The plain result of this math is to find that the 30 days have not passed.

In oral argument, Defendant's counsel did not disagree with the Court's application of the automatic exclusions under § 3161(h)(1)(D) and (E), or the math discussed above. The Defendant's position was that the Court should nevertheless interpret the deadlines to reflect and enforce the parties' intention that the Government only be given until May 24th, which the Government indisputably violated. In substance, the Defendant asked the Court to reform the April 18th Order, by deeming as excludable substantially fewer than the 53 days expressly excluded in that Order, to retroactively reach a result where the Government would have been required to indict by May 24th. Defendant provides no authority for this extraordinary request to re-write the exclusions of time in this manner after-the-fact, and the Court sees no basis to do this.

Thus, there is no Speedy Trial Act violation, and the Motion to Dismiss should be **DENIED**.

### C. *Regardless, Dismissal With Prejudice Is Unwarranted*

In the alternative, even if the Court were to retroactively re-write or ignore the exclusions of time in Judge Larkins's continuance orders and thereby find a Speedy Trial Act violation, the circumstances would not justify dismissal with prejudice. At most, the Criminal Complaint should be dismissed without prejudice, thus allowing the Government to seek an indictment.

It appears from the Government's unrefuted factual representations that the parties were actively meeting and negotiating the potential resolution of this case during the continuances, and that as of May 2019 Government counsel had a reasonable basis to believe that the Defendant would accept a pre-indictment plea agreement. The Court also credits the representation that the lapse resulted from counsel's calendaring error. There is no suggestion that the lapse resulted from any bad faith or intention to delay.[2]

Indeed, it appears that Government counsel identified his failure to calendar the proper date to Defendant's counsel, prior to the expiration of the deadline (but

---

[2] Further to the Government's credit, the Government conceded the existence of a violation in its responsive brief, and did not initially present any of the arguments presented above as to why there is no actual violation. The Court raised those concerns *sua sponte*, in attempting to apply the plain wording of the statute against the events plainly recorded in the docket.

apparently too late to formally indict) and attempted to work out a solution. The Defendant also does not deny that after initially stating that he would accept a plea agreement in early May, he then added the condition that he would only plea in exchange for a probationary sentence for the first time after being informed of—and presumably to take advantage of—the apparent calendaring error. These facts would not excuse a violation of the Speedy Trial Act. And Defendant and his counsel were entitled to take advantage of any negotiating leverage the windfall of the prosecutor's calendaring error might provide. But these facts also do not suggest bad faith by Government personnel, which is relevant to the question of whether dismissal with prejudice is warranted.

Further, Defendant has not identified any concrete prejudice created by the delay beyond May 24. Indeed, by the time of the motion to dismiss, the delay was only a matter of a few days. He asserts only conclusory and speculative allegations that "the longer the case extends the more difficult it will be [to] develop evidentiary and testimonial support for a trial defense." [29] at 2. This highly generalized statement makes no effort to explain whether and how the brief delay in this case so far has impaired any specific ability to develop evidence or defenses, and/or any specific reasons to believe such prejudice has occurred. At the same time, the facts alleged in the Complaint suggest that this is a serious fraud

conspiracy, involving hundreds of thousands of dollars in fraudulent checks that has impacted specific victims.

Finally, as set forth above, even finding a Speedy Trial Act violation on these facts would at best be a confusing and close legal question. The legal ambiguity over whether a violation even exists—and the fact that this ambiguity resulted from the parties' mutual oversights of law—counsels against the harsh result of dismissal with prejudice. Indeed, the resolution of this motion has become more extended and delayed because of the complications resulting from the parties' *mutual* legal errors.

Thus, even if there were a violation of the Speedy Trial Act, any dismissal of the Criminal Complaint should be without prejudice. Therefore, the Government should not be under any restriction against seeking an Indictment or otherwise formally presenting these charges.

## CONCLUSION

The Defendant's Motion to Dismiss With Prejudice [26] the Criminal Complaint should be **DENIED**. Because this case has not yet been indicted, no formal assignment of the case has been made to a District Judge or Magistrate Judge for trial or pre-trial purposes.[3] Therefore, the **CLERK** is **DIRECTED** to submit this Report and Recommendation to the Duty District Judge.

IT IS SO **RECOMMENDED** this 8th day of August, 2019.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] In this Court, such assignments are made at arraignment of the first Defendant after return of an Indictment or Information.